**Petition of Paul Werner AKLIN To be Admitted a Citizen of the United States of America.**

**No. 604179.**

United States District Court
E. D. New York.

Oct. 28, 1963.

William Suffin, Brooklyn, N. Y., for petitioner, Edward L. Dubroff, Brooklyn, N. Y., of counsel.

Milton Dan Kramer, Gen. Atty. for Immigration and Naturalization Service.

RAYFIEL, District Judge.

The petitioner, a native and citizen of Switzerland, born on December 25, 1913, was lawfully admitted for permanent residence in the United States on May 6, 1940. On October 16, 1940 he registered for Selective Service and on April 17, 1941 he filed a Declaration of Intention to become a citizen of this country in the United States District Court for the Southern District of New York. On August 11, 1941 he subscribed and swore to a classification questionnaire which he filed with Local Draft Board Number 260, which classified him in 1–A on August 14, 1941. By letter dated October 6, 1941 he requested a reclassification on the following grounds: (1) that he had certain physical disabilities which

would prevent his service, (2) that he was supporting his mother in Switzerland, (3) that he would reach the age of 28 on December 25, 1941, and (4) that his knowledge of English was limited. (Exhibit A–9 of Government's Exhibit 1). This application was denied by the Local Board by letter dated October 7, 1941, in which it pointed out that his physical condition had been passed upon by physicians employed both by the Local Board and the Army in his pre-induction physical examination; that his claim of dependence could not be considered since his mother was in Switzerland, and not in the United States or one of its possessions; that he was then under twenty-eight years of age; and that from the Board's observation of him he had "sufficient knowledge of the English language to meet the requirements of the Selective Service law." (Exhibit A–10 of Government's Exhibit 1). On October 13, 1941 he was inducted into the United States Army.

At that time, under the Selective Training and Service Act of 1940[1], aliens who filed Declarations of Intention to become citizens of the United States were liable for military service, there being no provision then for exemption therefrom on the ground of alienage. On December 20, 1941 Section 3(a) of said Act was amended, extending liability for military service to Non-Declarant Aliens. Provision was made for claims of exemption by neutral aliens upon the ground of alienage, upon condition, however, that any person making such a claim would thereafter be debarred from becoming a citizen of the United States.

On December 23, 1942, pursuant to this change in the law, the Swiss Minister in the United States requested the Secretary of State to release the petitioner from the Army on the basis of the Treaty of Friendship and Commerce of November 25, 1850 between the United States and Switzerland. On February 18, 1943 petitioner made a written ap-

1. Now 50 U.S.C.A.Appendix, § 451 et seq.

plication to his commanding officer for discharge from the United States Army on the ground that he was a citizen of Switzerland. On May 13, 1943 the petitioner, who had then attained the rank of Technician Fourth Grade, (Sergeant) and was serving as a Mess Sergeant, was honorably discharged from the Army for the "Convenience of the Government, AR 615–360, reconsideration of classification due to alienage." (Exhibit A–3 of Government's Exhibit 1).

On July 14, 1943 the petitioner was classified 1–A by his Local Board which classification was protested by him. The Local Board advised him, by letter dated July 23, 1943, (Exhibit A–15 of Government's Exhibit 1) that his request for reclassification was denied, and that he could secure a IV–C classification only by complying with the regulations governing the reclassification of aliens. It appears also that during this period the petitioner had tried to arrange for his departure from the United States. (See Exhibit A–17 and A–18 of Government's Exhibit 1.) He also communicated with the Swiss Legation which advised him by letter dated July 26, 1943 (Exhibit A–26 of Government's Exhibit 1) that it had "informed your Local Board in Flushing that you are subject to filing of the ordinary Form 301, which you could obtain from their office." It went on to say that "we are sending you, enclosed, two copies of the regular DSS Form 301, which kindly execute and file *immediately* with your Local Board."

The petitioner's appeal from his 1–A classification was denied and the Appeals Board continued his classification in 1–A. He again wrote to his Local Board on August 26, 1943, again requesting his reclassification so that he could work in the "Defense Industrie," (sic) and advised the Board that "if my Local Board should take further action to proceed with my induction for the second time, I would be forced to asked (sic) for the revised Form 301, and as you know, this would debar me from any possibiliy (sic) to help direct the war effort * * *"

(Exhibit A–20 of Government's Exhibit 1.)

Thereafter, on September 9, 1943, he appeared at his Local Board, filled out DSS Form 301 in his own handwriting, and signed and filed it. He then surrendered the triplicate copy of the Declaration of Intention which he had previously filed, and on September 14, 1943, he was classified IV–C.

On December 27, 1946 he filed a petition for naturalization in the United States District Court for the Southern District of New York. He later testified before a designated examiner of the United States Immigration and Naturalization Service. His petition was denied on November 21, 1949 on the ground that he was "ineligible for naturalization by virtue of provisions of Section 3A, Selective Training and Service Act of 1940 as amended, having made application for relief from military service; * * *"

On June 7, 1960 he filed the present petition in this Court. He was again examined before a designated examiner of the Immigration and Naturalization Service who recommended that the petition be denied on two grounds: the first, *Res Adjudicata*, based on the denial of his prior petition for citizenship in the Southern District of New York, and the second, based on his having signed and filed the DSS Form 301, wherein he claimed exemption from military service by reason of alienage, resulting in his exemption therefrom, and thereby rendering him permanently ineligible for citizenship pursuant to Section 315(a) of the Immigration and Nationality Act (Section 1426(a) of Title 8 U.S.C.).

This petition then came on to be heard before me.

█ I disagree with the Government's contention that the denial of the petition in the Southern District precludes the petitioner from again applying for citizenship. At the time the prior petition was filed in December, 1946, Section 3(a) of the Selective Training and Service Act of 1940 (former Section 303 (a) of Title 50 U.S.C.App.) was in ef-

fect. It provided that the mere *application* to be relieved from military service by an alien was sufficient to debar him from becoming a citizen. The law was changed in 1952, and in June, 1960, when the present petition was filed, Section 315(a) of the Immigration and Nationality Act (Section 1426(a) of Title 8 U.S.C.) was in effect. It provided that the alien, in order to be permanently debarred from citizenship, must not only have *made application* for exemption, but must *also* have been *relieved* or *discharged* from military service on that ground. The precise question involved here was passed upon in the case of Petition of Mirzoeff, D. C., 196 F.Supp. 230, in which it was held that an alien who had filed a petition for naturalization in 1947, which was denied on the ground that he had claimed exemption from military service, *was not* precluded from filing a subsequent petition in 1956 under Section 315(a) of the Immigration and Nationality Act of 1952, (Section 1426(a) of Title 8 U.S.C.) which established different requirements for debarring an alien from citizenship. As a matter of fact the Court there granted citizenship to the petitioner, who had filed a DSS Form 301 to be relieved from military service on account of alienage after he had been classified 1–A, but who had never been given the exempt neutral alien status of IV–C and relieved from service on that ground. He was classified IV–F after a physical examination and rejected for service for medical reasons.

On the question of *Res Adjudicata* which the Government raised in that case, Judge Dawson said, 196 F.Supp. at page 232, "The Government's contention that Mirzoeff's ineligibility in 1948 is *res adjudicata* as to the present petition is without merit. All that was decided in 1948 was that, under the terms of section 3(a) of the Selective Training and Service Act, Mirzoeff was then barred from naturalization. Since the Court is not now being asked to review or re-adjudicate the 1947 petition under the 1940 law, with a view to coming to a conclusion different from the earlier one, there is, in fact, no issue of *res adjudicata*. The Court, has before it only the 1956 petition, filed under the 1952 law. In the absence of a provision which would require the relation back of the 1956 petition to the 1940 law, this is, as every case must be, an original adjudication.

"[4] The naturalization laws of the United States are wholly statutory. Thus, under one law a specific alien, or group, may be eligible for citizenship, or ineligible for citizenship, and, upon the passage of a later law, Congress may determine that its original decision should be altered. If one is eligible for citizenship at any time under any law, he may then request the privilege, and so long as the law under which he is eligible is in effect, in the absence of other factors, that petition should be granted. It is quite possible that at one time Congress should see fit to restrict United States naturalization and at another to liberalize it. In that event, where an alien might be ineligible under an earlier law, once the restrictive law is amended or repealed, his eligibility under the new statute, the only existing law, may not be limited by virtue of a prior adjudicated ineligibility which is, under the new law, merely a nullity."

██ I come now to the second ground advanced by the Government for the denial of the petition herein, namely, that the petitioner's signing and filing of the DSS Form 301, in which he claimed exemption from military service by reason of alienage, and which resulted in his exemption, rendered him permanently ineligible for citizenship pursuant to Section 315(a) of the Immigration and Nationality Act (Section 1426(a) of Title 8, U.S.C.).

The DSS Form 301 contains the following language: "I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the

Act of Congress, approved December 20, 1941. I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States."

It is the petitioner's contention that his knowledge of English at the time that he filed the DSS Form 301 was so limited that he did not understand the meaning of the language contained therein. He testified that no one at the Local Board explained it to him and that he did not recall whether he had sworn to the form before he handed it to the clerk. It is also his contention that he would not have signed it if he had known that as a result thereof he could never become a citizen of this country.

Mrs. Helen F. Maher, who had been employed as a clerk at Local Board 260, testified that her signature appeared on the petitioner's DSS Form 301 (Exhibit A–5 Government's Exhibit 1) as the person before whom it had been subscribed and sworn to. Her testimony was to the effect that, although she had no independent recollection of this case, since it took place over twenty years ago, it was her invariable practice, as prescribed by the official instructions and Selective Service Regulations, to explain to an alien seeking to file a DSS Form 301 that it was an application for exemption from military service on the ground of alienage, and that if he signed it he could never become a citizen of the United States.

I am not impressed by the petitioner's contention, made in his brief, that he "did not knowingly and intentionally make an intelligent choice in filing his exemption application" because of his "rather sketchy ability to converse in, read or write the English language at the time he filed the DSS Form 301."

From the documentary evidence before me it is manifest that the petitioner fully understood the meaning of the language contained in the DSS Form 301 which he signed. His letter to the Draft Board dated June 28, 1943, (Exhibit A–14 of Government's Exhibit 1), written in his own handwriting, shows an adequate comprehension of the English language. Except for some minor errors in spelling, it is couched in clear and lucid language. His letter of July 20, 1943, (Exhibit A–15 of Government's Exhibit 1), which was typewritten, and which may have been prepared for him from information supplied by him, states that, while in the Army, he was an "Instructor in the Cooks and Baker School, even instructed Mess Officers through my great knowledge in handling food." Obviously, the instruction must have been given in English to personnel in the United States Army.

His testimony before the designated examiner of the Immigration and Naturalization Service, taken on November 26, 1947 in connection with the prior petition filed by him in the Southern District, is unequivocal on the subject of his being informed as to the effect of his signing the DSS Form 301. His testimony at that hearing appears on Page 4 of Exhibit A–4 of Government's Exhibit 1 and reads as follows:

"Q. Were you informed by the Local Board that the only way you could avoid being inducted again was to sign a Form 301 requesting exemption from service on the ground that you were a citizen of a neutral country?

"A. Yes.

"Q. Did you sign such a form?

"A. I think so.

"Q. Did they explain what the form was before you signed it?

"A. Wasn't it that I may not be able to become a citizen or something like that.

"Q. Was it at that time when you signed the form that you turned in your first papers?

"A. I think so.

"Q. Is this the form you signed? (exhibiting certified copy of DSS Form 301 dated December 9, 1943.)

"A. Yes, I signed this.

"Q. You knew when you signed that form that you were thereafter not eli-

gible to become a citizen of the United States, did you not?

"A. Yes. I always thought I could help the war effort by working in war factories in different ways."

The petitioner thus corroborated the testimony of Miss Maher referred to above that she had informed him as to the effect of his signing the DSS Form 301.

The petitioner has cited the cases of Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, and Petition of Koplin, D.C., 204 F.Supp. 33. In my opinion those cases are inapposite to the case at bar since I am convinced that the petitioner fully understood the consequences of his filing the DSS Form 301 with his Local Draft Board. I find that he "had the opportunity to knowingly make an intelligent choice in applying for exemption from military service." See Matter of Estevez, D.C., 189 F.Supp. 705, at page 710.

The petition for naturalization is denied.